**FILED**

MAY 18 2012

Clerk, U. S. District Court
Eastern District of Tennessee
At Knoxville

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
### KNOXVILLE DIVISION

CHRISTOPHER A. GILLIARD, Individually and
As Private Attorney General;
JULIA A. GILLIARD, Individually and
As Private Attorney General

**DEMAND FOR JURY TRIAL**

    **Plaintiffs**

Case No. $3:12-CV-236$

$PHILLIPS / GUYTON$

-v-

JPMORGAN CHASE BANK N.A.;
WILSON & ASSOCIATES, P.L.L.C.;
ANGELA BOYD, Attorney;
MORTGAGE ELECTRONIC REGISTERATION SYSTEMS, INC.;
CIT GROUP CONSUMER FINANCE, INC.;
U.S. BANK NATIONAL ASSOCIATION;
*Jointly Severally and/or in the Alternative*

    **Defendants**

_____/

## VERIFIED COMPLAINT

AND NOW come Plaintiffs, CHRISTOPHER A. GILLIARD, individually and JULIA A.
GILLIARD, individually and hereby sues each Defendant, JPMORGAN CHASE BANK N.A.;
WILSON & ASSOCIATES, P.L.L.C.; ANGELA BOYD, Attorney; MORTGAGE
ELECTRONIC REGISTERATION SYSTEMS, INC.; CIT GROUP CONSUMER FINANCE,
INC.; U.S. BANK NATIONAL ASSOCIATION.

## PRELIMINARY STATEMENT

This is an action for damages brought for damages for violations of the Real Estate Settlement Practices Act (RESPA) 12 U.S.C. §2605 et seq.; for damages for violations of the Truth in Lending Act (TILA)15 U.S.C. §1641 et seq.; for damages for violations of the Fair Debt Collection Practices Act (FDCPA) 15 U.S.C. §1692 et seq.; and over the statutory and common-law violations of Tennessee and common law and for declaratory and injunctive relief.

## JURISDICTIONAL ALLEGATIONS

1. The jurisdiction of this Court is conferred by 12 USC §2614; 15 USC §1692; and USC §1331.

2. Pursuant to 28 USC §1391b; Venue is proper in this District because all Defendants conducted business in Tennessee and the subject Note and Mortgage was executed in Monroe County, Tennessee.

3. This is an action for damages which exceed $204,000.00 against each Defendant.

4. Plaintiff CHRISTOPHER A. GILLIARD is a natural person and is a resident of Tennessee and is the real party in interest.

5. Plaintiff JULIA A. GILLIARD is a natural person and is a resident of Tennessee and is the real party in interest.

6. Defendant, JPMORGAN CHASE BANK, N.A is a Delaware Corporation, authorized to do business in Tennessee and is a "debt collector" as defined by 15 USC § 1692 et seq.

7. Defendant, WILSON & ASSOCIATES, P.L.L.C. is a law firm and a "debt collector" as defined by 15 USC § 1692 et seq. and is authorized to do business in Tennessee and is an agent of JPMORGAN CHASE BANK, N.A.

8. Defendant, ANGELA BOYD is an attorney of the Defendant law firm, WILSON & ASSOCIATES, P.L.L.C. and is a "debt collector" as defined by 15 USC § 1692 et seq. and is authorized to do business in Tennessee and is an agent of Defendant JPMORGAN CHASE BANK, N.A.

9. Defendant, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (hereinafter referred to "MERS") is a Delaware corporation with a principal place of business at 1818 Library Street, Reston, VA 20190, and does business in the Commonwealth of Tennessee.

10. Defendant, CIT GROUP CONSUMER FINANCE, INC. is a Delaware Corporation, authorized to do business in Tennessee and is a "debt collector" as defined by 15 USC § 1692 et seq.

11. Defendant, U.S. BANK NATIONAL ASSOCIATION a/k/a U.S. Bank is a nationally chartered bank headquartered in Minneapolis, Minnesota. U.S. BANK NATIONAL ASSOCIATION operates as a subsidiary of parent company U.S. Bancorp and is a "debt collector" as defined by 15 USC § 1692 et seq.

12. All conditions precedent to the bringing of this action have been performed, waived or excused.

13. Plaintiffs contend that Defendants have conspired and committed fraud in order to wrongfully foreclose with total disregard for Federal and Tennessee State laws.

14. Plaintiffs contend that Defendants have created and caused fraudulent documents to be filed into the public records of Monroe County, Tennessee and into the State Court giving the appearance that there is a legal foreclosure going while some or all of the Defendants continue to break the law.

Case 3:12-cv-00236-TWP-HBG Document 1 Filed 05/18/12 Page 3 of 31 PageID #: 3

15. Plaintiffs contend that this is common practice by some or all Defendants nationwide and that some or all Defendants are under investigation by the U.S. Department of Justice and the Attorneys General of both the United States and including but not limited to Florida and Nevada.

16. Any allegations about acts of any corporate or other business Defendants means that the corporation or other business did the alleged acts through its officers, directors, employees, agents and/or representatives while they were acting within the actual or ostensible scope of their authority.

17. At all relevant times, each Defendant committed acts, caused or directed others to commit the acts, or permitted others to commit the acts alleged in this Complaint; additionally, some of the Defendants acted as the agent for other Defendants, and all of the Defendants acted within the scope of their agency as if acting as the agent of another.

18. Knowing or realizing that other Defendants were engaging in or planning to engage in unlawful conduct, each Defendant nevertheless facilitated the commission of those unlawful acts.

19. Each Defendant intended to and did encourage, facilitate or assist in the commission of the unlawful acts, and thereby aided and abetted the other Defendants in the unlawful conduct.

20. All Defendants engaged in continuous and multiple unfair and deceptive trade practices, fraud and misrepresentations that affected interstate commerce and proximately caused the herein injuries to the Plaintiff.

21. Upon belief and information, CHRISTOPHER A. GILLIARD and JULIA A. GILLIARD contend that many of these practices are widespread for all of the Defendants. The Plaintiffs intend to propound discovery to each Defendant identifying these other individuals who have suffered similar violations.

## GENERAL FACTUAL ALLEGATIONS

22. On or about May 20, 2005, Plaintiff, CHRISTOPHER A. GILLIARD executed a Note with the Lender CIT GROUP CONSUMER FINANCE, INC. (TN). The Note was for $68,000.00. A copy of the Note is attached hereto and incorporated herein and marked **Exhibit "A"**.

23. As security for the aforementioned Note, on May 20, 2005, Plaintiffs executed a Mortgage (hereinafter as referred to "Mortgage") identifying, as lender, MERS as "nominee for Lender and Lender's successor's and assigns....[and as a] beneficiary under [the instrument]..." See **Exhibit "A-2"**.

24. Plaintiffs' loan was immediately sold and securitized after closing by CIT GROUP CONSUMER FINANCE, INC. (TN) to EMC MORTGAGE CORPORATION (a banking company) and placed into a Pooling and Servicing Agreement and converted into a stock of a Pass Through Vehicle. The *mortgage title was never officially transferred to the trust and as a result*, the Note was put out of eligibility for the trust under New York law.

25. There is no evidence that CIT GROUP CONSUMER FINANCE, INC. (TN) endorsed the Note to anyone or that the Mortgage was properly assigned to the now purported holder-in-due-course U.S. BANK NATIONAL ASSOCIATION.

26. If such assignment did occur, Plaintiffs were never notified of it pursuant to federal RESPA law.

27. The alleged loan was nevertheless registered on the SEC as a Real Estate Mortgage Investment Conduit (REMIC) Trust and became a Special Purpose Vehicle (SPV) for the purpose of tax exemption.

28. REMICs are investment vehicles that hold commercial and residential mortgages in trust and issues securities representing an undivided interest in these mortgages.

29. A master servicer of the REMIC was appointed as was a Trustee, Defendant, U.S. BANK NATIONAL ASSOCIATION

30. Normally, the Trustee of a Trust has the power and responsibility to administer the assets of the Trust but in the case of a REMIC no such power exists.

31. Once the REMIC containing Plaintiffs' loan was formed, the loan was converted into a security owned by thousands of shareholders throughout the world and was traded on Wall Street.

32. At that point, the state of the Plaintiffs' loan changed and was converted forevermore into a stock.

33. Once the Plaintiffs' loan was securitized and converted, it forever lost its security.

34. Since the loan was sold and securitized into stock, the lender can no longer claim that it is a real party in interest, or even that the loan stills exists as a loan, since double dipping is a form of securities fraud.

35. A negotiable instrument can only be in one of two states after undergoing securitization, not both at the same time. It can either be a loan or a stock.

36. Once the instrument is traded as a stock, it is forever a stock and therefore regulated, as this loan was, by the SEC as a stock.

37. The subject Mortgage states that the Mortgage secures the Promissory Note.

38. The Promissory Note, by conversion into stock, was extinguished as a collateralized asset and therefore the Trust secures absolutely nothing and U.S. BANK NATIONAL ASSOCIATION, et al., not being the real parties in interest, have no standing to foreclose on Plaintiffs personal property.

Page 6 of 31

39. Since the Lender sold the loan to a REMIC, it forever lost the ability to enforce, control or otherwise foreclose on Plaintiffs' property, including the right to assign the Mortgage or endorse the Note. It was no longer the real party of interest.

40. If U.S. BANK NATIONAL ASSOCIATION/Trustee owned the Note, it would have to be taxed on the interest earned from the Note. If the REMIC owned the Note it would have a tax liability.

41. To avoid double taxation, under Internal Revenue Code 860, the loan was put into a SPV so that only the shareholders are taxed and therefore are the real parties in interest.

42. Because of IRS code 860, U.S. BANK NATIONAL ASSOCIATION/Trustee is not the real and beneficial party in interest because the REMIC does not own the Note, the shareholders do.

43. By distributing the tax liabilities to the shareholders, the REMIC has also distributed the parties in interest.

44. Since a Promissory Note is only enforceable in its whole entirety and thousands of shareholders own the subject Note, no one of them can foreclose on Plaintiffs' property.

45. The asset of the REMIC was registered and traded as a part of a security and as such cannot be traded out and is permanently attached and converted into stock preventing the Note from being assigned and securitized again and again which would create securities fraud.

46. Since Plaintiffs' loan went into default, it was written off by the REMIC and received tax credits from the IRS, was therefore discharged, and settled destroying the Note forever.

47. After securitization, the Note cannot be re-attached to the Mortgage through adhesion.

48. Under the UCC, the Promissory Note is a one-of-a-kind instrument and any assignment must be as a permanent fixture onto the original Note much like a check.

49. There is no endorsement on the original Note.

50. The original Promissory Note has the only legally binding chain of title, otherwise the instrument is faulty.

51. The original Note had to be destroyed upon securitization because the Note and the stock cannot exist at the same time.

52. All Defendants lack standing to enforce the Note.

53. Under the terms of the Pooling and Servicing Agreement, the servicer can buy back the Note as a non-performing non-secured debt like collection agencies that buy non-performing credit card debts.

54. This purchase is of a discharged asset and cannot be re-adhered to the original Mortgage, since the original Note was a one-of-a-kind instrument, not part of the discharged asset.

55. Therefore the purchaser of the discharged asset can never be the holder-in-due-course of the original Note.

56. Under the UCC, the original Promissory Note is the only valid and legally binding chain of title for the Note.

57. The numerous attempts by Defendants to claim ownership of the original Note by the purchaser of the discharged asset is fraudulent and is characterized as "reverse engineering." See **Exhibits "B" "C" "E" "F" and "G"**.

58. There is no perfection of title.

59. Plaintiffs' Note was unduly confusing and written in such a manner as to confuse Plaintiffs and for the purpose of drawing Plaintiffs into a default. **Exhibit s "A" and "A-2"**.

60. Upon information and belief, MERS was established in or around 1993 by members of the mortgage banking industry so as to create a centralized document custodial system through which mortgages can be easily transferred between members without having to record or pay county filing fees for such assignments.

61. Plaintiffs never executed a note naming MERS as a party, nor were Plaintiffs ever notified or informed of a transfer of the note to MERS.

62. No evidence exists to support the claim that MERS is or was ever was the holder in due course of the Note at issue in this action.

63. MERS, listed on the Mortgage as the "nominee" or agent, and as the one-time purported holder of the Note, by and through its membership rules, was not empowered to act as an agent or nominee for its members, and was without specific written approval from both principals and lacked the mandate to effectuate mortgage-related assignments, transfers or appointments of any kind.

64. There is no evidence to suggest that during the relevant time periods contemplated in this Action, MERS was empowered by both principals to effectuate any mortgage-related assignment, transfer or appointment.

65. Plaintiffs' were never informed or notified of any transfer of the Note to Defendant, U.S. BANK NATIONAL ASSOCIATION.

66. The Mortgage states that only the Lender can make an assignment.

67. No evidence exists to support the claim that the U.S. BANK NATIONAL ASSOCIATION is the holder in due course of the Note at issue in this action.

68. Plaintiffs' mortgage was flawed from the date of origination of the loan because MERS was named as the beneficiary and nominee of the lender on the Mortgage, which was done for purposes of deception, fraud, confusing -- and therefore harming--the Plaintiffs,

and theft of revenue from the local county government through the illegal avoidance of mortgage recording fees.

69. MERS is unregistered and unlicensed to conduct mortgage lending or any other type of business in the Commonwealth of Tennessee and has been and continues to knowingly, intentionally, illegally and fraudulently record mortgages and conduct business in Tennessee on a large scale and systematic fashion.

70. Neither MERS nor U.S. BANK NATIONAL ASSOCIATION is the original lender for the Plaintiffs' subject Mortgage or Note herein.

71. On January 13, 2012, Defendant, MERS attempted to be a party in standing during a foreclosure action against Plaintiff and purported to make an assignment to the Defendant U.S. BANK NATIONAL ASSOCIATION/Trustee. **See Exhibit "E"**.

72. Neither of the Defendants are legally documented assignees of either the Plaintiffs' Mortgage or Note and do not hold the original Mortgage nor have they ever held the Plaintiffs' Note.

73. No Note or other evidence exists which could ever make the Plaintiffs indebted to the Defendants in any way.

74. Neither of the Defendants ever had nor will they ever have the authority to assign the Mortgage to any entity.

75. Neither of the Defendants ever had any right to collect on the Note or enforce the Mortgage, nor have they ever had a right to hold, enforce or collect upon Plaintiffs' Note.

76. At the time Plaintiff(s) signed the Note and Mortgage, they were unknowingly converting their property into an asset of a MBS and were deliberately induced into signing a Negotiable Instrument, which was never intended as such, but was intended as collateral for a MBS.

77. The alleged Note in question started its life as a negotiable instrument, similar to a check. The negotiation and enforceability of the Note is governed by Article Three (3) of the Uniform Commercial Code.

78. The note that had been executed with the Mortgage became part of a pool of mortgages losing its individual identity as a note between a lender and a borrower; it merged with other unknown notes as a total obligation due to the investor or investors; it is no longer a negotiable instrument, rather, collateral for a federally regulated Security under the confines of the SEC.

79. In actuality, MERS was not the "nominee" for the lenders; the true Lenders were investors who had provided the funds for the loans through mortgage backed security pools which were held as trusts.

80. This fact was known to MERS and the Servicers and the subsequent assignees of any and all rights purported to have been assigned by MERS at the time the note and Mortgage was signed by Plaintiffs and at the time of each and every later purported assignment by MERS, or others, of any interest in the note and Mortgage.

81. The proper parties to this action would be the investors of the mortgage-backed securities to which Plaintiffs' loan was securitized; but these parties have no recorded interest in the Mortgage, which were never delivered to the Trustee for the mortgage backed security pool; therefore the note itself is, at best, unsecured rights to payment.

82. All Defendants knew that Plaintiffs' loan was securitized or intended to be securitized prior to the preparation of the note and mortgage reflecting the loan.

83. All of the purported Assignments and transfers were done by the Defendants without the required corporate resolution giving authority for that person to conduct such assignments and transfers.

84. A "debt collector" under the statute is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the

collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. §1692a (6).

85. Attorneys who regularly engage in debt collection or debt collection litigation are covered by the FDCPA and their litigation activities must comply with the requirements of that Act.

## COUNT I

### (DISCLOSURE VIOLATION PURSUANT TO 15 U.S.C. 1635, ET. SEQ.)

86. Plaintiffs reallege and restate the foregoing jurisdictional allegations and general factual allegations.

87. The present case credit transaction is governed by the disclosure requirements of Title 15 USC 1635.

88. The UCC 1 lien applies to the transaction under revised Article 9 and to Defendants, because lien rights on the property arose in favor of Defendants as a result of the transaction.

89. Defendants failed and /or refused to meet the disclosure requirements of Revised Article 9 of the UCC, by not providing the notice required or filing it before during or immediately after the settlement, as mandated under the Article.

90. As a direct and proximate result, Plaintiffs suffered substantial money damages.

**WHEREFORE** CHRISTOPHER A. GILLIARD and JULIA A. GILLIARD demands judgments for money damages against each Defendant, together with such other and further relief as the Court may deem reasonable and just under the circumstances.

## COUNT II
## (DISCLOSURE VIOLATIONS, PURSUANT TO TITLE 12 CODE OF FEDERAL REGULATIONS SECTION 226, ET. SEQ.)

91. Plaintiffs reallege and restate the foregoing jurisdictional allegations and general factual allegations.

92. The Federal Reserve Board Interpretation, Title 12 Code of Federal Regulations Part 226, Supplement I, Paragraph 23(a)(1), provides that in the present case the transaction is rescindable for reasons above and below stated.

93. The disclosures made in relation to the consumer credit transaction were not presented in the manner required by law. Furthermore, the disclosures were not grouped together and were not segregated from everything else as required by Title 12 Code of Federal Regulations, Section 226.17(a)(1) and in this case were not given at all.

94. As a direct and proximate result, Plaintiffs suffered substantial money damages.

**WHEREFORE** CHRISTOPHER A. GILLIARD and JULIA A. GILLIARD demands judgments for money damages against each Defendant, together with such other and further relief as the Court may deem reasonable and just under the circumstances.

## COUNT III
## (RIGHT TO RECIND VIOLATIONS, PURSUANT TO TITLE 12 CODE OF FEDERAL REGULATIONS SECTION 226, ET. SEQ.)

95. Plaintiffs reallege and restate the foregoing jurisdictional allegations and general factual allegations.

96. The right to rescind or cancel settlement documents was unsigned by both parties, and was not disclosed or given, as required by Title 12 Code of Federal Regulation, Section 226.18 et seq.

97. As a direct and proximate result, Plaintiffs suffered substantial money damages.

**WHEREFORE** CHRISTOPHER A. GILLIARD and JULIA A. GILLIARD demands judgments for money damages against each Defendant, together with such other and further relief as the Court may deem reasonable and just under the circumstances.

## COUNT IV
## (RIGHT TO CANCEL VIOLATIONS, PURSUANT TO TITLE 12 CODE OF FEDERAL REGULATIONS SECTION 226, ET. SEQ.)

98. Plaintiffs reallege and restate the foregoing jurisdictional allegations and general factual allegations.

99. There was no separate form to cancel, as required by Title 12 Code of Federal Regulation, Section 226 et seq.

100.     As a direct and proximate result, Plaintiffs suffered substantial money damages.

**WHEREFORE** CHRISTOPHER A. GILLIARD and JULIA A. GILLIARD demands judgments for money damages against each Defendant, together with such other and further relief as the Court may deem reasonable and just under the circumstances.

## COUNT V
## (DECEPTIVE GROUPING VIOLATIONS, PURSUANT TO TITLE 12 CODE OF FEDERAL REGULATIONS SECTION 226, ET. SEQ.)

101.     Plaintiffs reallege and restate the foregoing jurisdictional allegations and general factual allegations.

102.     The interest disclosures were not given together with other information within the documents.

103.    As a direct and proximate result, Plaintiffs suffered substantial money damages.

**WHEREFORE** CHRISTOPHER A. GILLIARD and JULIA A. GILLIARD demands judgments for money damages against each Defendant, together with such other and further relief as the Court may deem reasonable and just under the circumstances.

## COUNT VI
## (NO GOOD FAITH ESTIMATE VIOLATIONS, PURSUANT TO TITLE 12 CODE OF FEDERAL REGULATIONS SECTION 226, ET. SEQ.)

104.    Plaintiffs reallege and restate the foregoing jurisdictional allegations and general factual allegations.

105.    Plaintiffs, as required by 12 Code of Federal Regulation, Section 226.18(c) and 12 USC 2601 et seq., received no good faith estimate copy.

106.    As a direct and proximate result, Plaintiffs suffered substantial money damages.

**WHEREFORE** CHRISTOPHER A. GILLIARD and JULIA A. GILLIARD demands judgments for money damages against each Defendant, together with such other and further relief as the Court may deem reasonable and just under the circumstances.

## COUNT VII
## (CONSUMER STATEMENT MISSING VIOLATIONS, PURSUANT TO TITLE 12 CODE OF FEDERAL REGULATIONS SECTION 226, ET. SEQ.)

107.    Plaintiffs reallege and restate the foregoing jurisdictional allegations and general factual allegations.

108.    A statement that the consumer should refer to the appropriate contract document and clause for information about nonpayment, default, and the right to accelerate was not given, as required by Title 12 Code of Federal Regulation, Section 226.18(p).

109.    As a direct and proximate result, Plaintiffs suffered substantial money damages.

**WHEREFORE** CHRISTOPHER A. GILLIARD and JULIA A. GILLIARD demands judgments for money damages against each Defendant, together with such other and further relief as the Court may deem reasonable and just under the circumstances.

## COUNT VIII

## (DISCLOSURE VIOLATIONS, PURSUANT TO TITLE 15 U.S.C. SECTION 1601, ET. SEQ. AND REGULATION Z)

110.    Plaintiffs reallege and restate the foregoing jurisdictional allegations and general factual allegations.

111.    Since this action was commenced, Defendants has continued and so continues to violate the Consumer Credit Protection Act, Title 15 United States Code, Section 1601 et seq., and Regulation Z, Title 12 Code of Federal Regulations, Part 226, which was adopted pursuant to such Act, by failing to properly make the disclosures required by the Act and Regulation Z, as herein after more particularly set forth.

112.    As a direct and proximate result, Plaintiffs suffered substantial money damages.

**WHEREFORE** CHRISTOPHER A. GILLIARD and JULIA A. GILLIARD demands judgments for money damages against each Defendant, together with such other and further relief as the Court may deem reasonable and just under the circumstances.

## COUNT IX
## (FAILURE TO DISCLOSE CALCULATION OF MORTGAGE BALANCE, PURSUANT TO TITLE 12 CFR SECTION 226.4, ET. SEQ.)

113. Plaintiffs reallege and restate the foregoing jurisdictional allegations and general factual allegations.

114. Defendants failed to disclose in or with the disclosure statements, because no disclosure statements were given, the amount of the balance to which the rate was applied and an explanation of how that balance was determined and further failed to disclose the fact that the balance is determined without first deducting all credits and payments made and payments as required by Title 12 Code of Federal Regulations, Section 226.4 et seq.

115. As a direct and proximate result, Plaintiffs suffered substantial money damages.

**WHEREFORE** CHRISTOPHER A. GILLIARD and JULIA A. GILLIARD demands judgments for money damages against each Defendant, together with such other and further relief as the Court may deem reasonable and just under the circumstances.

## COUNT X
## (FAILURE TO DISCLOSE ITEMIZATION OF CHARGES, PURSUANT TO TITLE 12 USC 2610 ET SEQ.)

116. Plaintiffs reallege and restate the foregoing jurisdictional allegations and general factual allegations.

117. Defendants failed to disclose in or with the acceleration statement the amounts, itemized and identified by type, of charges other than finance charges debited to the account during the acceleration period as required by Title 12 Code of Federal Regulations, Section 226.21.

118. As a direct and proximate result, Plaintiffs suffered substantial money damages.

**WHEREFORE** CHRISTOPHER A. GILLIARD and JULIA A. GILLIARD demands judgments for money damages against each Defendant, together with such other and further relief as the Court may deem reasonable and just under the circumstances.

## COUNT XI
## VIOLATIONS OF THE FAIR DEBT COLLECTIONS PRACTICES ACT ("FDCPA") 15 USC § 1692

119.   Plaintiffs reallege and restate the foregoing jurisdictional allegations and general factual allegations.

120.   Plaintiffs are a consumer within the meaning of the FDCPA, 15 U.S.C. §1692a(3).

121.   Defendants are debt collectors within the meaning of the FDCPA, 15 U.S.C. §1692a(6).

122.   Defendants misrepresented the character and legal status of the unlawful debt in violation of 15 USC 1692(e)(2), by sending false correspondence to Plaintiffs and third persons and assisting in the filing of an unlawful foreclosure action in Monroe County, Tennessee Court.  See **Exhibit "E"**

123.   Defendants threatened to take and did take actions that they could not legally take without the ruse and falsities committed upon the Plaintiffs in violation of 15 USC 1692(e)(5).

124.   Defendants engaged in conduct that disgraced the Plaintiffs in violation of 15 1692(e)(7), by sending false correspondence to Plaintiffs and third persons and assisting in the filing of an unlawful foreclosure action in Monroe County court.  See **Exhibits "B", "C", "E" "F" and "G"**.

125.   Although Plaintiffs disputed the alleged debt, Defendants communicated false credit information to others and failed to communicate that the debt was disputed, when it was disputed, in violation of 15 USC 1692(e)(8).   See **Exhibit "D"**.

126. Defendants stated numerous times that they were the lawful owners in interest of the debt or empowered to speak on behalf of the owner in interest, yet knew or should have known that they were not, and as such violated 15 USC 1692(e)(5).

127. All Defendants engaged in unfair and deceptive means and attempts to collect the alleged debt in violation of 15 USC 1692 (f).

128. Defendants attempted to collect the alleged debt in a manner and amount not authorized by the original MORTGAGE and Note in violation of 15 USC 1692(f)(1).

129. Defendants threatened to unlawfully repossess the Plaintiffs' property in violation of 15 USC 1692(f)(8).

130. Pursuant to 15 USC 1692(k), Plaintiffs are entitled to actual damages, statutory damages as set forth herein, and reasonable attorney fees and costs.

131. Because the conduct of the Defendants was frequent and persistent and because the nature of the violations of the FDCPA were so egregious and because the FDCPA violations were a part of a deliberate scheme, Plaintiffs are entitled to the maximum possible relief permitted under 15 USC 1692k(a).

132. As a direct and proximate result, Plaintiffs suffered substantial money damages.

**WHEREFORE** CHRISTOPHER A. GILLIARD and JULIA A. GILLIARD demands judgments for money damages against each Defendant, together with such other and further relief as the Court may deem reasonable and just under the circumstances.

## COUNT XII
## VIOLATIONS OF RESPA 12 U.S.C. 2601 ET SEQ.

133.     Plaintiffs reallege and restate the foregoing jurisdictional allegations and general
factual allegations.

134.     Defendants failed to timely inform Plaintiffs of any alleged Appointments,
Assignments and transfers of the mortgage in violation RESPA.

135.     Defendants failed to timely notify Plaintiffs of any change of servicers.

136.     Plaintiffs have previously made written demands to Defendants to show evidence
of standing to claim a debt and Defendants have refused to evidence such standing.

137.     As a direct and proximate result, Plaintiffs suffered substantial money damages.

   **WHEREFORE** CHRISTOPHER A. GILLIARD and JULIA A. GILLIARD demands
judgments for money damages against each Defendant, together with such other and further
relief as the Court may deem reasonable and just under the circumstances.

## COUNT XIII
## SLANDER OF TITLE/PETITION TO QUIET TITLE

138.     Plaintiffs reallege and restate the foregoing jurisdictional allegations and general
factual allegations.

139.     The Defendants have knowingly and maliciously communicated, in writing, false
statements that have the effect of disparaging the Plaintiffs' title to property. The
Plaintiffs' have incurred special damage as a result.

140.     U.S. BANK NATIONAL ASSOCIATION/Trustee has no legally enforceable
claim, interest or standing to sue as to the Note or Mortgage in question and the claim is a

cloud on the Defendants' title and should be quieted under Tennessee State and Federal law.

141.     Plaintiffs are the only rightful owners of the subject property.

142.     Plaintiffs are the legal titleholders of his property.

143.     The Defendants have knowingly and unlawfully caused a cloud to be recorded against the title of the Plaintiffs' property and have caused to be sent notices of default and foreclosures, and have served and filed mortgage documents that claim an interest in the property of the Plaintiffs.

144.     Any purported transfer of any interest in the Plaintiffs' real estate was wrongful and invalid because the endorsements, assignments, foreclosures or purported foreclosures were invalid and were not conducted in accordance with the laws of Tennessee.

145.     The Defendants knew or should have known that such transfers were wrongful and invalid and the publication of an ownership interest in the Plaintiffs' property is, therefore false.

146.     The recording of the mortgages published the information to third parties. **See Exhibit "G" - Up Coming Sales published on the Internet.**

147.     Because of said wrongful publication of an ownership interest in the Plaintiffs' property, Plaintiffs have incurred damages and will continue to incur attorneys' fees and costs related to this litigation, in an amount to be proven at trial.

148.     Plaintiffs seek a declaratory judgment against Defendants stating that Defendants have violated Plaintiffs' rights and that the Defendants had and have no right to hold mortgages in the name of U.S. BANK NATIONAL ASSOCIATION/Trustee and/or

foreclose on the Plaintiffs' property and that the Defendants are entitled to no further payments from the Plaintiffs or recognition in Plaintiffs' Title to their property.

149.    The Plaintiffs are entitled to a reformation of these notes as unsecured notes or as partially or wholly discharged notes and a right to reformation of the contracts with the persons or entities who are owed obligations because of funding of the loans of the Plaintiffs.

150.    As a direct and proximate result, Plaintiffs suffered substantial money damages.

    **WHEREFORE** CHRISTOPHER A. GILLIARD and JULIA A. GILLIARD demands judgments for money damages against each Defendant, together with such other and further relief as the Court may deem reasonable and just under the circumstances.

### COUNT XIV
### FRAUD AND MISREPRESENTATION
### TENNESSEE CONSUMER PROTECTION ACT of 1977
### Uniform Deceptive Trade Practices Act Adopted
### No (§47-18-101 et seq.)

151.    Plaintiffs reallege and restate the foregoing jurisdictional allegations and general factual allegations.

152.    On January 13th, 2012, the Defendants intentionally instituted unlawful foreclosure against Plaintiffs based upon fraudulent documents filed in the Monroe County Court.  **See Exhibit "E".**

153.    The deceptive acts of the Defendants and their employees and agents resulted in a multitude of misrepresentations, including but not limited to the true identity of the Lender, and the fraudulent misrepresentation as to the Mortgagee.

154. The Defendants induced the Plaintiffs to enter into the transaction when there existed in the inducement and execution material representations that were false and were known to be false or were made recklessly, which inducement was reasonably acted upon by Plaintiffs and acted upon in reliance thereon and Plaintiffs have suffered injury proximately due to such.

155. The scheme employed by Defendants intentionally had the capacity and tendency to deceive Plaintiffs, and did deceive Plaintiffs and the Clerk of Court.

156. The acts of the Defendants violated standards of fair trade practices and affected commerce.

157. As a result of the Defendants unfair and deceptive trade practices, Plaintiffs have been proximately injured in their business and their persons.

158. This foreclosure has been continued with a published sale date on **May 21, 2012, on or about 11:00AM., at the Monroe County Courthouse, Madisonville, Tennessee, offer for sale certain property hereinafter described to the highest bidder FOR CASH, the following described property situated in Monroe County, Tennessee: Lying and being in the First Civil District of Monroe County, Tennessee, and being in what is known as Roberts Addition to the Town of Sweetwater, Tennessee, and more particularly described as follows:**

**Tract 1: Being a dwelling and two (2) lots No. Six (6) and Seven (7), as shown by plat of Roberts Addition in town of Sweetwater, Tennessee, which plat is of record in the Register's Office of Monroe County, Tennessee, in misc. Book 31, Page 469.**
**Tract 2: Being Lot No. Five (5) in Roberts Addition, a plat of which is recorded in the Register's Office of Monroe County, Tennessee, in Misc. Book 31, Page 469.**

**ALSO KNOWN AS: 1019 Bennett Street, Sweetwater, Tennessee 37874**

159.    The deceptive acts of the Defendants constitute fraudulent misrepresentation and
        the Defendants are jointly and severally liable for their acts of fraud by their
        misrepresentation and all damages stemming from such, including punitive damages and
        attorneys' fees.

160.    As a direct and proximate result, Plaintiffs suffered substantial money damages.

**WHEREFORE** CHRISTOPHER A. GILLIARD and JULIA A. GILLIARD demands
judgments for money damages against each Defendant, together with such other and further
relief as the Court may deem reasonable and just under the circumstances.

## COUNT XV
## NEGLIGENT SUPERVISION

161.    Plaintiffs reallege and restate the foregoing jurisdictional allegations and general
        factual allegations.

162.    Defendants had a duty of care to supervise the actions of their employees and
        agents.

163.    Defendant's employees and/or agents' actions, as alleged previously, were
        unlawful and violated Plaintiff's property rights.

164.    Defendants knew or should have known that their employees and/or agents were
        acting unlawfully.

165.    As a result of the Defendants' negligent supervision, Plaintiffs were proximately
        injured by the unlawful acts of their employees and/or agents.

166.    An agency relationship exists between the individual Defendants and the
        corporate Defendants.

Page 24 of 31

167.     The actions of the individual Defendants were done on behalf of and at the
        direction of the corporate Defendants and within the scope of their agency relationship.

168.     As a result of the actions of all the Defendants, the Plaintiffs were injured.

169.     As a direct and proximate result, Plaintiffs suffered substantial money damages.

**WHEREFORE** CHRISTOPHER A. GILLIARD and JULIA A. GILLIARD demands
judgments for money damages against each Defendant, together with such other and further
relief as the Court may deem reasonable and just under the circumstances.

## COUNT XVI
## COMMON LAW FRAUD AND INJURIOUS FALSEHOOD

170.     Plaintiffs reallege and restate the foregoing jurisdictional allegations and general
        factual allegations.

171.     The publicly filed false mortgage assignments enabled all of the Defendants to
        perpetrate the fraudulent foreclosure.

172.     All of the Defendants knew or should have known the material representations
        were false.

173.     The material representations to the Plaintiffs were made so that the Monroe
        County court and the Plaintiffs would believe that the Defendants had a legitimate claim
        in the property. The Plaintiffs relied on such and the Plaintiffs were injured as a result
        with the facing of foreclosure litigation.

174.     Defendants fraudulently concealed their wrongdoings and prevented Plaintiffs
        from discovering their cause of action.

175.    Plaintiffs have been injured by the fraud by Defendants and have remained in
        ignorance of it without any fault or want of diligence or care on their part.

176.    Defendants made many misleading statements that the loan contained certain
        terms desirable to the consumer when it did not.

177.    Defendants' use of deceit or trickery caused Plaintiffs to act to their disadvantage.

178.    As a direct and proximate result, Plaintiffs suffered substantial money damages.

    **WHEREFORE** CHRISTOPHER A. GILLIARD and JULIA A. GILLIARD demands
judgments for money damages against each Defendant, together with such other and further
relief as the Court may deem reasonable and just under the circumstances.

## COUNT XVII
### VIOLATION OF TRUTH IN LENDING ACT (TILA), 15 U.S.C. §1641

179.    Plaintiffs reallege and restate the foregoing jurisdictional allegations and general
        factual allegations.

180.    A new creditor must provide notice of its status pursuant to 15 U.S.C. §1641(g):
        (1) In general-
        In addition to other disclosures required by this subchapter, not later than 30 days
        after the date on which a mortgage loan is sold or otherwise transferred or
        assigned to a third party, the creditor that is the new owner or assignee of the debt
        shall notify the borrower in writing of such transfer, including—

            (A) the identity, address, telephone number of the new creditor;

            (B) the date of transfer;

            (C) how to reach an agent or party having authority to act on behalf of the
            new creditor;

Page 26 of 31

(D) the location of the place where transfer of ownership of the debt is recorded; and

(E) any other relevant information regarding the new creditor.

181.    As a direct and proximate result, Plaintiffs suffered substantial money damages.

**WHEREFORE** CHRISTOPHER A. GILLIARD and JULIA A. GILLIARD demands judgments for money damages against each Defendant, together with such other and further relief as the Court may deem reasonable and just under the circumstances.

**DEMAND FOR JURY TRIAL** pursuant to rule 38(a) of the F.R.C.P. Plaintiffs demand a jury trial as to all issues triable by a jury.

Respectfully submitted this May 17, 2012,
With Reservations of Rights UCC1-308.

CHRISTOPHER A. GILLIARD, Pro Se Plaintiff
P.O. Box 684
Sweetwater, TN 37874

Respectfully submitted this May 17, 2012,
With Reservations of Rights UCC1-308.

JULIA A. GILLIARD, Pro Se Plaintiff
P.O. Box 684
Sweetwater, TN 37874

Page 27 of 31

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## KNOXVILLE DIVISION

**CHRISTOPHER A. GILLIARD, Individually,**
**and JULIA A. GILLIARD, Individually,**

**Plaintiffs,**

Case No. 3:12-CV-236

v.

**JPMORGAN CHASE BANK N.A.;**
**WILSON & ASSOCIATES, P.L.L.C.;**
**ANGELA BOYD, Attorney;**
**MORTGAGE ELECTRONIC REGISTERATION SYSTEMS, INC.;**
**CIT GROUP CONSUMER FINANCE, INC.;**
**U.S. BANK NATIONAL ASSOCIATION;**
*Jointly Severally and/or in the Alternative,*

**Defendants.**

_____/

## AFFIDAVIT OF VERIFICATION OF COMPLAINT

STATE OF TENNESSEE

COUNTY OF Monroe

BEFORE ME personally appeared Christopher A. Gilliard, who being by me first duly sworn
and identified in accordance with Tennessee State Law, deposes and says:

    1. My name is Christopher A. Gilliard, Plaintiff herein.

    2. I have read and understood the attached foregoing Verified Complaint filled herein,

and each fact alleged therein is true and correct of my own personal knowledge.

FURTHER THE AFFIANT SAYETH NAUGHT.

Christopher A. Gilliard

Christopher A. Gilliard

**NOTARY PUBLIC**

The foregoing instrument was acknowledged before me this 17th day of $May$ (date) _____, by CHRISTOPHER A. GILLIARD, who is personally known to me or has produced a State of Tennessee Drivers License as identification and who **did take an oath**.

WITNESS my hand and official seal, this 17th day of $May$ 2012.

Barbara J. Dalton

Notary Public State of Tennessee        $8-19-15$

My Commission expires:



# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
### KNOXVILLE DIVISION

**CHRISTOPHER A. GILLIARD, Individually,**
**and JULIA A. GILLIARD, Individually,**

**Plaintiffs,**

Case No. 3:12-CV-236

v.

**JPMORGAN CHASE BANK N.A.;**
**WILSON & ASSOCIATES, P.L.L.C.;**
**ANGELA BOYD, Attorney;**
**MORTGAGE ELECTRONIC REGISTERATION SYSTEMS, INC.;**
**CIT GROUP CONSUMER FINANCE, INC.;**
**U.S. BANK NATIONAL ASSOCIATION;**
*Jointly Severally and/or in the Alternative,*

**Defendants.**

_____/

## AFFIDAVIT OF VERIFICATION OF COMPLAINT

STATE OF TENNESSEE

COUNTY OF Monroe

BEFORE ME personally appeared Julia A. Gilliard, who being by me first duly sworn and identified in accordance with Tennessee State Law, deposes and says:

1. My name is Julia A. Gilliard, Plaintiff herein.

2. I have read and understood the attached foregoing Verified Complaint filled herein, and each fact alleged therein is true and correct of my own personal knowledge.

FURTHER THE AFFIANT SAYETH NAUGHT.

Page 30 of 31

_Julia A. Gilliard_

Julia A. Gilliard

## NOTARY PUBLIC

The foregoing instrument was acknowledged before me this $\underline{17}$ day of $\underline{May}$ (date) $\underline{2012}$, by JULIA A. GILLIARD, who is personally known to me or has produced a State of Tennessee Drivers License as identification and who **did take an oath**.

WITNESS my hand and official seal, this $\underline{17}$ day of $\underline{May}$ 2012.

_Barbara J Dalton_

My Commission expires:

Notary Public State of Tennessee

$8 \cdot 19 \cdot 15$